# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BRANDON DEMARLO MONGHUR,

    Petitioner,

vs.

WARDEN BRIAN E. WILLIAMS, et al.,

    Respondents.

Case No. 2:12-cv-01653-JCM-PAL

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#5) and respondents' answer (#15). The court finds that relief is not warranted, and the court denies the petition.

    Respondents have created a statement of the facts of the case. Answer, at 2-5 (#15). The court has read the transcript of the trial, and the court agrees with respondents' statement. Petitioner and Antoinette Wilson lived in the same apartment, and they had three children. They were not in a romantic relationship, and Wilson was dating another man. On April 16, 2007, petitioner choked Antoinette Wilson, at one point pushing her neck into an iron bar that was part of a bed frame. Wilson dropped their baby daughter while being choked. The iron bar left a mark on Wilson's neck, and she could speak only with difficulty afterward. On June 2, 2007, petitioner entered the apartment and started arguing with Wilson about her boyfriend. Six children, including the three children of petitioner and Wilson, were in the apartment at the time. Petitioner hit Wilson above an eye, and the skin split open. Two children tried to leave the apartment, and petitioner prevented

them.  Petitioner continued to hit and kick Wilson.  Some of the children tried to protect Wilson, and they received some of petitioner's blows.

      Petitioner went to trial on twelve counts spread over the two incidents.  For the April incident, petitioner was charged with attempted murder of Wilson with the use of a deadly weapon, battery of Wilson constituting domestic violence with the use of a deadly weapon, and child abuse and neglect of the baby.  For the June incident, petitioner was charged with burglary, first-degree kidnapping of Wilson, two counts of coercion for preventing children from leaving the home, and five counts of child abuse and neglect.  The jury acquitted petitioner on the charge of attempted murder.  For the burglary charge, the jury found petitioner guilty of the lesser-included offense of trespass.  For the coercion charges, the jury found petitioner guilty without the aggravating factor of physical force.  On all other counts, the jury found petitioner guilty as charged.  Ex. 14 (#8).  The prosecution sought adjudication of petitioner as a habitual criminal.  Ex. 15 (#8).  The state district court agreed.  Petitioner received six-month jail sentences for trespassing and the two counts of coercion without physical force because those crimes were misdemeanors.  The rest of the crimes were felonies, and pursuant to the habitual-criminal statute, Nev. Rev. Stat. § 207.010(1)(b), the state district court imposed sentences of life imprisonment with parole eligibility after ten years.  All the sentences run concurrently.  Ex. 20 (#8).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 24 (#8).

      Petitioner then filed a post-conviction habeas corpus petition in the state district court.  Ex. 25 (#8).  The state district court denied the petition.  Ex. 33 (#8).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 38 (#8).

      Petitioner then commenced this action.  The court screened the petition (#5) and dismissed grounds 4, 5, 6, 10, 14, and part of 3, because they lacked merit.  Respondents then filed a motion to dismiss (#7).  The court dismissed ground 9 as procedurally defaulted.  The court found that grounds 7, 8, 11, 12, 13, and 15 were not exhausted, and petitioner dismissed them.  Grounds 1, 2, and 3, in part, remain.

      Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

The three remaining grounds all are claims of insufficient evidence to support the verdict. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

Ground 1 is a claim that insufficient evidence existed to support the verdict for first-degree kidnaping. On this issue, the Nevada Supreme Court held:

> First, Monghur contends that the trial court erred in denying his motion to set aside the verdict for first-degree kidnapping. Particularly, Monghur claims that there was insufficient evidence presented to demonstrate asportation of the victim.
>
> As applied to the present case, NRS 200.310(1) states
>
>> A person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain . . . for the purpose of . . . inflicting substantial bodily harm upon [her] . . . is guilty of kidnapping in the first degree which is a category A felony.
>
> Asportation is not required because Monghur seized and confined the victim in order to inflict substantial bodily harm upon her, and the State did not charge him with an associated offense based on any substantial bodily harm inflicted upon the victim during the kidnapping. [Footnote 1: The kidnapping charge was based on an incident that occurred on June 2, 2007. The battery domestic charge was based on an incident that occurred on April 16, 2007.] The cases that Monghur cites are therefore inapposite as they addressed convictions for kidnapping and the associated offense, such as robbery or sexual assault. See, e.g., Hutchins v. State, 110 Nev. 103, 867 P.2d 1136 (1994), holding modified by Mendoza v. State, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006). Those cases thus address when the state may obtain dual convictions arising from a single incident. See Mendoza, 122 Nev. at 273, 130 P.3d at 180. The State did not seek dual convictions in this case and the jury was presented with such evidence that it could have rationally been convinced of the defendant's guilt beyond a reasonable doubt. Thus, the district court did not err in refusing to set aside the jury verdict for first-degree kidnapping.

Ex. 24, at 2-3 (#8) (citations omitted). The testimony showed that petitioner prevented Wilson from leaving the apartment. Ex. 13, at 56 (#8).[1] Wilson also testified that petitioner punched her hard

---

[1] The trial transcript is a rough draft, with four pages of transcript per sheet. As respondents note, the copy is poor in quality, and the rough-draft pages are almost impossible to read. Like respondents, the court cites to the page numbers generated by the court's electronic case filing

1  enough to cause her to bleed above her eye. <u>Id.</u> at 55 (#8). Finally, even though asportation is not
2  an element of kidnapping when it is charged not in conjunction with another crime, Wilson testified
3  that petitioner moved her from the bedroom of the apartment to the hallway. <u>Id.</u> at 56 (#8). The
4  jury could have inferred the necessary intent from petitioner's efforts to keep two children from
5  leaving as well as his statements that he did not want to go to jail and that the children could not
6  leave. <u>Id.</u> at 67-68 (#8). The Nevada Supreme Court reasonably could have held that that evidence
7  was sufficient to support the verdict for first-degree kidnapping. Ground 1 is without merit.

   Ground 2 is a claim that the evidence was insufficient to support the deadly-weapon part of the verdict for battery constituting domestic violence with the use of a deadly weapon. On this issue, the Nevada Supreme Court held:

> Second, Monghur contends that trial court erred in denying his motion to set aside the verdict for battery constituting domestic violence with the use of a deadly weapon. Particularly, Monghur contends that insufficient evidence was presented to support the deadly weapon element because the metal bed frame that he pressed the victim's neck against did not constitute a deadly weapon.
>
> Monghur was charged with battery constituting domestic violence with the use of a deadly weapon, thus the deadly weapon was an element of the crime pursuant to NRS 200.481. Therefore, the functional test applies. <u>Zgombic v. State</u>, 106 Nev. 571, 574, 798 P.2d 548, 550 (1990), <u>superseded by statute on other grounds</u>, <u>Steese v. State</u>, 114 Nev. 479, 499 n.6, 960 P.2d 321, 334 n.6 (1998). Under the functional test, an instrumentality, even though not normally dangerous, is a deadly weapon whenever it is used in a deadly manner. <u>Clem v. State</u>, 104 Nev. 351, 357, 760 P.2d 103, 106-07 (1998), <u>overruled on other grounds by</u> <u>Zgombic</u>, 106 Nev. 571, 798 P.2d 548.
>
> This court has not previously decided whether a stationary object may be used as a deadly weapon under the functional test. Other jurisdictions, however, have found that a stationary object can be classified as a deadly weapon. See <u>State v. Montano</u>, 973 P.2d 861, 862 (N.M. Ct. App. 1998) (holding that brick wall is deadly weapon where defendant slammed victim's head against it because definition hinges on the character of the object and the manner of its use); <u>Taylor v. State</u>, 679 A.2d 449, 454 (Del. 1996) (holding that heavy floor fan base us deadly weapon when defendant beat victim's head against it and "used" and controlled weapon even though defendant never touched weapon); <u>State v. Reed</u>, 790 P.2d 551, 551 (Or. Ct. App. 1990) (holding that concrete can be defined as deadly weapon when defendant slammed victim's head into concrete sidewalk and thus used concrete in a manner which renders it readily capable of causing serious physical injury).
>
> Here, Monghur, while choking the victim, pressed her neck against the metal bed frame hard enough that the bed frame broke and the victim lost consciousness. A burn impression was left on the victim where the bed frame came in contact with her neck. Although Monghur did not wield the weapon in his hands in order to press it against the victim's neck, we see

28 system.

> little difference in Monghur taking part of the bed frame and pressing it to the victim's neck, or taking the victim's neck and pressing it to the bed frame—the damage to the victim remains the same. Taylor, 679 A.2d at 454 ("One may use an item . . . without ever actually touching it and still be deemed to have exercised control over it."). Because Monghur exercised control of the victim by pressing her neck against the bed frame, we conclude that sufficient evidence was presented demonstrating that Monghur used the bed frame as a deadly weapon. Therefore, the district court did not err in refusing to set aside the verdict as to the enhancement.

Ex. 24, at 3-5 (#8). If petitioner is taking issue with the Nevada Supreme Court's holding that pushing Wilson's neck onto a bar of the bed frame is the use of a deadly weapon, then the claim fails. As the Nevada Supreme Court noted, it had not made any holding whether a stationary object can be a deadly weapon; the question was open in Nevada. Furthermore, it was following a trend of decisions of other state courts, and its logic was not clearly unreasonable. If petitioner is taking issue with the evidence that he actually pushed the Wilson's against the bar, then the claim fails. Wilson testified that petitioner pushed her neck into the bar, and photographs show a mark on Wilson's neck after the incident. Credibility is a question left to the jury, and the testimony of Wilson, if believed, is sufficient for the jury to find that petitioner did push Wilson's neck against the bar. Ground 2 is without merit.

Ground 3 is a claim that insufficient evidence existed to support the verdict for 6 counts of child abuse and neglect. On this issue, the Nevada Supreme Court held:

> Third, Monghur contends that the trial court erred in denying his motion to set aside the verdict because there was insufficient evidence presented for child abuse and neglect for two reasons: (1) the State did not prove that Monghur was responsible for the safety or welfare of the children and permitted or allowed them to suffer unjustifiable physical pain or mental suffering; and (2) the State presented no evidence that Monghur wilfully caused any of the children pain or mental suffering.
>
> Monghur's first contention confuses two different offenses in NRS 200.508.
>
> NRS 200.508(1) provides that child abuse occurs when a person
>
>> willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect:
>>
>> . . .
>
> In contrast, NRS 200.508(2) provides that child neglect or endangerment occurs when "[a] person who is responsible for the safety or welfare of a child . . . permits or allows that child

-6-

> to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer."
>
> Thus, although NRS 200.508(2) requires the person to be responsible for the safety or welfare of the child, NRS 200.508(1) does not. Although the information did not specify which section Monghur was being charged with, language in the information made it clear that NRS 200.508(1) applied. Thus, the State was not required to present evidence demonstrating that Monghur was responsible for the safety or welfare of any of the children present. [Footnote 2: There were six children present: three of the children belonged to the victim, two were the victim's niece and nephew, and one was a neighbor.]
>
> Monghur's second contention lacks merit because evidence was presented to the jury demonstrating that Monghur willfully caused several children to suffer unjustifiable physical pain or mental suffering. "Willful" describes actions that are "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary, 1292 (7th ed. 2000). Twice, Monghur attacked the victim while she was holding one of the children. Monghur slammed another one of the children's arms in the door to prevent him from leaving, and he kicked two of the children while attempting to kick the victim. The victim tried to crawl between the legs of one of the children in an attempt to escape the beating that Monghur was inflicting on her. Blood was pouring from the victim's head to various areas of the house as she attempted to flee. The prosecution presented sufficient evidence that Monghur voluntarily and intentionally exposed the children to physical pain or mental suffering beyond a reasonable doubt. Thus, the district court did not err in denying Monghur's motion to set aside the verdict on the child abuse and neglect charges.

Ex. 24, at 5-7 (#8). When the court dismissed ground 10 and part of ground 3 on screening, it found that the argument that petitioner could not have been guilty under Nev. Rev. Stat. § 200.508(2) lacked merit. As for the argument that the evidence was insufficient to support the verdicts of child abuse under Nev. Rev. Stat. § 200.508(1), the Nevada Supreme Court's holding was reasonable. Apart from the evidence that petitioner actually did hit, kick, or slam a door into at least two children, the testimony of the July incident described a violent and bloody attack from which any juror reasonably could have found to have caused mental suffering in the children. Ground 3 is without merit.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

-7-

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Reasonable jurists would not find debatable the court's dismissal on screening of grounds grounds 4, 5, 6, 10, 14, and part of 3. These grounds lacked merit on their faces. Reasonable jurists would not find debatable the court's finding that grounds 7, 8, 11, 12, 13, and 15 were unexhausted, nor would they find debatable the court's finding that ground 9 was procedurally defaulted. Reasonable jurists would not find debatable the court's decisions that grounds 1 and 3 are without merit. Those decisions are based upon questions of credibility, which is left to the jury. Reasonable jurists would not find debatable the court's decision that ground 2 is without merit. The question of pushing a person into a stationary object amounting to the use of a deadly weapon was open in Nevada, and the Nevada Supreme Court is the final word on questions of state law. For these reasons, the court will not issue a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#5) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: September 10, 2015.

_____
JAMES C. MAHAN
United States District Judge